**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON**

**REGINA GAIL GIBSON,**

    **Plaintiff,**

    **v.**                                        **CIVIL ACTION NO. 2:15-cv-12154**

**CAROLYN W. COLVIN,**
**Acting Commissioner of Social Security,**

    **Defendant.**

**<u>MEMORANDUM OPINION</u>**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for disability insurance benefits (DIB) and supplemental security income (SSI) under the Social Security Act. The parties consented to the undersigned United States Magistrate Judge ordering the entry of final judgement. Presently pending before this Court are Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 12) and Defendant's Brief in Support of Defendant's Decision (ECF No. 13).

On November 18, 2011, Regina Gail Gibson (Claimant) filed an application for DIB and SSI alleging disability as of January 27, 2012.[1] The Commissioner of Social Security (Defendant) denied Claimant's applications initially on February 17, 2012 and on reconsideration June 11, 2012. Claimant requested a hearing before an Administrative Law Judge (ALJ) on July 10, 2012. On December 10, 2013, an ALJ presided over the hearing in Charleston, West Virginia. On March 7, 2014, the ALJ issued a decision finding Claimant not disabled under the Act. On March 26,

---

[1] In Claimant's applications for DIB and SSI, she asserted an alleged disability onset date of August 1, 2011. By letter dated March 27, 2013, Claimant amended her alleged onset date to January 27, 2012.

1

2014, Plaintiff timely filed a request for review by the Appeals Council. On June 16, 2015, the Appeals Council issued a final decision denying Plaintiff's request for review. Thereafter, Claimant filed the instant civil action.

### Claimant's Background

Claimant was born on March 3, 1963. On the date of the hearing she was 50 years old. She received her GED and has a "two-year equivalent, an associate's degree, in data processing with emphasis on accounting" (Tr. at 62). Claimant's 21 year old son with alleged intellectual impairment lives with Claimant (Tr. at 78-79). She has a daughter that lives in Florida (Tr. at 81). Claimant has a driver's license (Tr. at 80).

### Standard of Review

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. *See Blalock v. Richardson*, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2015). If an individual is found "not disabled" at any step, further inquiry is unnecessary. *Id.* § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. *Id.* § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. *Id.* § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. *Id.* § 404.1520(d). If it does, the claimant is found disabled and awarded

benefits. *Id.* If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. *Id.* § 404.1520(e). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. *Hall v. Harris,* 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. § 404.1520(f) (2015). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. *McLamore v. Weinberger*, 538 F.2d 572, 574 (4th Cir. 1976).

In this case, the ALJ determined that Claimant has not engaged in substantial gainful activity since January 27, 2012, the amended alleged onset date (Tr. at 24). The ALJ found that Claimant has the severe impairments of osteoarthritis, status post reconstructive surgery left ankle, tenosynovitis, plantar fasciitis, heel spur syndrome with bursitis and gastrocnemius equinus contracture, status-post right foot lipoma, degenerative disc disease, lumbargo, fibromyalgia, carpal tunnel syndrome and impingement syndrome right shoulder (Tr. at 24-25). Under the second step, the ALJ found that Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments (Tr. at 28). The ALJ found that Claimant has the residual functional capacity to perform light work except she can perform occasional balancing, stooping, kneeling, crouching, climbing ramp and stair, ladders, ropes and scaffolding. She would be limited to frequent handling, fingering, feeling with the bilateral upper extremities and frequent overhead reaching with the right upper extremity,

Case 2:15-cv-12154   Document 14   Filed 03/31/17   Page 4 of 18 PageID #: 1029

dominant side. (*Id.*) The ALJ held that Claimant is capable of performing past relevant work as a daycare center worker, cashier/concession stand and as a children's attendant (Tr. at 36). The ALJ held that "there are jobs that exist in significant numbers in the national economy that the claimant can also perform" (Tr. at 37). Upon this basis, the ALJ denied Claimant's applications for DIB and SSI.

## Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson*, substantial evidence was defined as:

> Evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

*Blalock v. Richardson*, 483 F.2d 773, 776 (4th Cir. 1972) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

### The Medical Record

The Court has reviewed all evidence of record, including the medical evidence of record, and will discuss it further below as it relates to Claimant's arguments.

### Claimant's Challenges to the Commissioner's Decision

Claimant asserts that the ALJ did not adequately address and analyze the combined effect of Claimant's impairments and failed to consider all of Claimant's limitations in the RFC (ECF No. 12). Claimant argues that the ALJ did not adequately address Claimant's obesity and diabetes mellitus. Claimant avers that the ALJ failed to properly assess Claimant's credibility and to reference or discuss the opinion of Dr. Lana Hofeldt. (*Id.*) In response, Defendant asserts that the ALJ properly considered the combined effects of Claimant's impairments (ECF No. 13). Defendant avers that the ALJ properly assessed Claimant's credibility and correctly addressed the emergency room record for Claimant's temporary exacerbation of back pain.

### RFC

After step three of the ALJ's sequential analysis, but before deciding whether a claimant can perform past relevant work at step four, the ALJ must determine the claimant's RFC. An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p. The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p. "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d at 636 (quoting S.S.R. 96-8p). Where a claimant has numerous impairments, including non-severe impairments,

the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted).

The claimant's RFC must incorporate impairments supported by the objective medical evidence in the record, as well as those impairments based on the claimant's credible complaints. *Carter v. Astrue,* 2011 WL 2688975, at *3 (E.D.Va. June 23, 2011); *accord* 20 C.F.R. § 416.945(e). The ALJ's RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e.g.,* laboratory findings) and nonmedical evidence (*e.g.,* daily activities, observations)." *Id.* (citing SSR 96-8p).

The Court will uphold the ALJ's RFC findings if substantial evidence in the record supports the findings and the ALJ has applied the correct legal standards in reaching them. *Hancock v. Astrue,* 667 F.3d 470, at 472 (4th Cir. 2012). "A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling. The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin,* 734 F.3d 288, 295 (4th Cir.2013). The Court will "remand to the agency for additional investigation or explanation when we cannot evaluate the record of the basis that underlies the ALJ's ruling." *Fox v. Colvin,* 632 Fed.Appx. 750, 754 (4th Cir.2015) (quoting *Radford,* 734 F.3d at 295).

The responsibility for determining a claimant's residual functional capacity rests with the ALJ. 20 C.F.R. § 404.1546(c). "[T]he adjudicator's assessment of an individual's RFC may be the most critical finding contributing to the final determination or decision about disability." SSR

6

No. 96-5p. An RFC assessment is "based on consideration of all relevant evidence in the case record."

The Fourth Circuit has held "Although we could guess what these occupations require in reality, it is the purview of the ALJ to elicit an explanation from the expert ..." *Pearson v. Colvin,* 810 F.3d 204, 211 (4th Cir. 2015). The duty rests with the ALJ, not a reviewing court, to find facts and resolve conflicts. *Radford,* 734 F.3d at 296; *see also Brown v. Colvin,* 639 Fed.Appx. 921, 923, 2016 WL 50298, at *2 (4th Cir. Feb. 9, 2016) ("We remand to avoid engaging in fact-finding `in the first instance' and to allow the ALJ to further develop the record so that we can conduct a meaningful judicial review"). And, as the Fourth Circuit has repeatedly made clear, the ALJ must provide a sufficient explanation of his findings to allow for meaningful appellate review. *See Mascio,* 780 F.3d at 637 ("Because we are left to guess about how the ALJ arrived at his conclusion on [Plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended, remand is necessary."); *Cook v. Heckler,* 783 F.2d 1168, 1173 (4th Cir.1986) (holding that without an adequate explanation, "it is simply impossible to tell whether there was substantial evidence to support the determination").

## Discussion

The Commissioner must consider the combined effect of all a claimant's impairments. Under 20 CFR §§ 404.1523, 416.923, if a claimant suffers from multiple impairments, the Commissioner must "…consider the combined effect of all…impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." Further, combination must be evaluated throughout the sequential evaluation process. In pertinent part, 20 CFR § 404.1523 provides:

7

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process.

The ALJ carefully stated that in assessing Claimant's residual functional capacity, he "considered the functional limitations resulting from all of the claimant's medically determinable impairments, including those that are nonsevere" (Tr. at 27). The ALJ's assessment of Claimant's residual functional capacity assessment (RFC) did not fail to consider the combined effect of all of Claimant's impairments. The ALJ considered opinions from State agency reviewing consultative physicians Uma Reddy, M.D. and Nisha Singh, M.D. and gave them both substantial weight (Tr. at 35). After discussing and weighing the opinion of Dr. Reddy, the ALJ then stated that "subsequent evidence received since this examiner's review establishes greater limitations. As such, the residual functional capacity is reduced."

The ALJ provided a thorough analysis of the evidence in the record. The ALJ discussed imaging evidence, physician treatment notes, emergency room records and physical therapy notes. The ALJ then discussed whether there were side-effects from medications and the effectiveness of treatments, as follows:

> As to side effects of medication, the claimant noted on a function reported [sic] form that Tylenol and Ibuprofen were slowly damaging her liver (Exhibit 11F, 8). However, she denied any side effects at the hearing, and the medical records, such as office treatment notes, do not corroborate those allegations. In addition, the medical records reveal that the medications have been relatively effective in controlling the claimant's symptoms. In particular, she

> had injections in the right shoulder with significant relief (Exhibit 14F, 7 and 14).
>
> In terms of other treatment, the claimant has been prescribed and followed appropriate treatment for the alleged impairments, including conservative and surgical measures, which weighs in the claimant's favor, but the medical records reveal that the treatment has been relatively effective in controlling the claimant's symptoms. For example, she had left ankle surgery, with noted improvement (Exhibit 10F, 99). She received orthotic inserts (Exhibit 11F, 17), power step orthotics, which were comfortable (Exhibit 17F, 3), and orthotic shoes and inserts, which she reported as comfortable (Exhibit 21F, 2). She was complaint [sic] with physical therapy and noted improvement and reports she was able to perform all activities of daily living (Exhibits 27F, 14 and 28F, 1).
>
> Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor. Yet a review of the record in this case reveals no restrictions recommended by the treating doctor. Indeed the doctor ordered the claimant to walk more (Exhibit 10F, 99) and to perform exercise 30 minutes five times a week (Exhibit 16F, 12) (Tr. at 33-34).

The ALJ considered the extent to which Claimant's treatment had been effective in controlling her symptoms, denoting overwhelming evidence showing significant benefits from treatment (Tr. at 33-34). The ALJ also considered the lack of restrictions placed upon Plaintiff by treating sources and, on the contrary, orders from physicians that Plaintiff walk more and exercise regularly (Tr. at 34).

The ALJ discussed numerous inconsistent statements that appeared in the record, regarding Claimant's allegations to the Commissioner as opposed to her statements to physicians (Tr. at 34). The ALJ then discussed Claimant's acknowledged daily activities, which were also in contrast with Claimant's allegations of debilitating effects from her impairments (Tr. at 34-35).

The ALJ considered, in detail, the opinion evidence in the record (Tr. 35-36), before concluding that Plaintiff's claims of extreme limitations ultimately did not enjoy support from the objective evidence in the record (Tr. 36). Obesity can exacerbate the effects of a claimant's impairments, as explained in Social Security Ruling (SSR) 02-1p, 2002 WL 34686281. The SSR therefore directs ALJs to explain how they reach their conclusions concerning the impact of a claimant's obesity on the claimant's limitations. In the present matter, the ALJ provided that Claimant was five foot tall and weighed 169 pounds which calculates to a body mass index (BMI) of 33.0 (Tr. at 27). The ALJ confirmed that he "considered the potential impact of obesity in causing or contributing to co-existing impairments" as directed by SSR 02-1p. (*Id.*) He then articulated that the record provided "no evidence of any specific or quantifiable impact on pulmonary, musculoskeletal, endocrine, or cardiac functioning," and therefore concluded, that her obesity was not a severe impairment at step two of the sequential evaluation process. (*Id.*) The ALJ went on to acknowledge his further obligation to consider both severe and non-severe impairments in assessing Claimant's residual functional capacity. *See* 20 C.F.R. §§ 404.1545(e), 415.945(e)). The ALJ found that the evidence before him did "not support a finding of any additional functional limitations other than those included in Finding 5 [the residual functional capacity finding]" for a reduced range of light work.

<u>Obesity and Diabetes Mellitus</u>

SSR 02-1p delineates that some effects of obesity may not be obvious and that, for example, it may cause sleep apnea and a resultant lack of clarity during the day. *Id.*, 2002 WL 3468828, at *6. The ALJ carefully addressed Claimant's allegation of sleep apnea, explaining that Claimant underwent a sleep study for suspected sleep apnea, which was normal (Tr. at 27, 697). However, Claimant contradicted her own allegation by stating she was

10

"playing games on her phone at night" (Tr. at 34, 707) and doing so until midnight or even later before getting up at 6 am (Tr. at 707). The sleep specialist opined the Claimant should stop such distracting bedtime activities and that there was "no physiological reason" for Claimant not to sleep well. (*Id.*)

Obesity may also enhance pain and limitations associated with arthritis, according to SSR 02-1p. *Id.* 2002 WL 3468828, at *6. However, the ALJ found that the medical evidence showed that in this case, physical therapy was effective for Claimant's back and hip pain (Tr. at 33). Claimant appeared at physical therapy on October 5, 2012 reporting "no pain" and had already walked two miles before her appointment that day (Tr. at 941). At her follow-up session, Claimant's pain level continued as "0" out of 10 with 10 being the most severe. Records show that after physical therapy for shoulder impingement, Claimant experienced a significant diminution in pain (Tr. at 935-936). As the ALJ explained, Dr. Sale found that Claimant had improved (Tr. at 32, 946).

The ALJ acknowledged that Claimant's body mass index established obesity; found the obesity not to be severe; and then considered whether Claimant's obesity presented additional functional limitations, appropriately concluding in light of the record that the residual functional capacity for only a reduced range of light work was not further diminished by Claimant's obesity (Tr. at 27). Likewise, the ALJ considered the effects of Claimant's diabetes, correctly explaining that it was being medically managed (Tr. at 26-27). Claimant testified at the hearing that she only needed insulin for a short time, and that she had been so successful with diet and weight loss that she was even able to cut another medication in half (Tr. at 30, 76).

Credibility

The Fourth Circuit has held that an ALJ's credibility findings are "virtually unreviewable by this court on appeal." *Darvishian v. Green*, 404 F. App'x 822, 831 (4th Cir. 2010)(citing *Bieber v. Dept. of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *Salyers v. Chater*, No. 96-2030, 1997 WL 71704, at *1 (4th Cir. Feb. 20, 1997) (unpublished) (an "ALJ's credibility findings… are entitled to substantial deference"). When evaluating a claimant's testimony, the ALJ first considers whether the claimant has one or more medically determinable impairments that could reasonably be expected to produce the symptoms alleged. *See* 20 C.F.R. §§ 404.1529(b) and 416.929. If such an impairment(s) exists, the ALJ then evaluates the intensity, persistence and limiting effects of the alleged symptoms arising from these impairments to determine the extent to which the alleged symptoms limit the claimant's ability to work. *See* 20 C.F.R. §§ 404.1529(c) and 416.929.

As the fact-finder, the ALJ has the exclusive responsibility for making credibility determinations. *See*, *Shively v. Heckler*, 739 F.2d 987, 989-990 (4th Cir. 1984) (stating that "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight"). The Social Security Administration recently issued Social Security Ruling 16-3p, 2016 WL 1119029 (March 16, 2016) ("SSR 16-3p"), which provides new guidance for ALJs to follow when evaluating a disability claimant's statements regarding the intensity, persistence, and limiting effects of symptoms. SSR 16-3p replaces Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996) ("SSR 96-7p"). SSR 16-3p eliminates the term "credibility" used in SSR 96-7p and clarifies "adjudicators will not assess an individual's overall character or truthfulness." SSR 16-3p, 2016 WL 1119029, at *1, 10. That is, "[t]he change in wording is meant to clarify that administrative

law judges aren't in the business of impeaching claimants' character," but "obviously administrative law judges will continue to assess the credibility of pain assertions by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin,* 2016 WL 3997246, at *1 (7th Cir. July 26, 2016).

Defendant assets that "the record was littered with inconsistencies between Plaintiff's contentions and her own reported progress in medical records. Defendant provided the following examples:

- Plaintiff appeared at her hearing, dramatically moving about the room, requesting a break to take pain medication, and describing purported pain in her right shoulder so excruciating that it felt like a "vise on it and someone is twisting a knife in the middle of it at the moment I'm speaking" (Tr. 68). Raising her arm, she claimed, was "almost like the plague" (Tr. 72). Yet she had just completed a course of physical therapy for that shoulder, maintained that no further sessions were necessary, and reported unequivocally to her supervising physician, "I am better" (Tr. 946). She was "not having any pain in her shoulder" (Tr. 934).

- Plaintiff further claimed at her hearing that she could not stand for more than 10 or 15 minutes before needing to sit or elevate her leg, and made the remarkable claim that she spent between 22 and 23 hours a day with her leg elevated (Tr. 65- 66, 70-71). Yet she had just completed a course of physical therapy sessions that lasted 30 minutes each with no indication of a need to sit and elevate the leg, nor, for that matter, any indication of any extreme limitations whatsoever (Tr. 932-35).

- In her sworn testimony, Plaintiff insisted that she could not use her arm for more than about five minutes (Tr. 69), but treatment records documented that she had recently cooked for four hours to save food from a broken freezer, served as a banner waver at church, and washed and waxed a car (Tr. 932).

- Plaintiff testified that there was almost "not a part of [her] body" that did not hurt, that her neck felt like "somebody has wrung it out like a dishrag," and that she was never free from pain (Tr. 70-72), yet she recently reported just that – an absence of pain, and only minimal pain – to her physical therapist (Tr. 934, 936).

- Plaintiff testified that she was trying to ameliorate her shoulder symptoms with exercises, but "it's not helping" (Tr. 68). That statement was flatly contradicted by her own statements to the physical therapist that she "definitely feels she

13

>
> has made progress with the shoulder," that the "goals of therapy [were] confirmed as being met," and that, as she professed to Dr. Sale, "I am better" (Tr. 946).

- Plaintiff reported in her disability forms that she experienced pain in "every joint from head to toes," that she had pain "all day every day," that she experienced pain "everywhere," and that if she could "scream all day long at [the] top of [her] lungs [it] wouldn't help it" (Tr. 370, 395). Yet five days after her comment about screaming at the top of her lungs, Plaintiff appeared at her podiatrist's office for an eight-week postoperative visit and "denied significant problems," with only some "mild discomfort" at the top of the foot (Tr. 820). Treatment records throughout her period of purported disability routinely denote Plaintiff as in no acute distress (NAD) (Tr. 658, 672, 710, 828, 882, 897, 900, 951, 953) (ECF No. 13).

Ultimately, the ALJ held the following:

> The credibility of the claimant's allegations of disabling symptoms and limitations is diminished because those allegations are greater than expected in light of the objective clinical evidence and treatment notes. Specifically, the objective medical evidence indicates in January 2011, an x-ray of the claimant's chest evidenced degenerative osseous changes. In April 2011, electrodiagnostic testing revealed bilateral CTS, severe on the right, moderate on the left. An ulnar entrapment neuropathy was not demonstrated (Exhibit 4F, 1-2). On July 2011, an MRI of the left ankle revealed joint effusion, mild posterior tibial tenosynovitis, and bone contusion with bone marrow edema (Exhibit 11F, 4). On July 19, 2011, and [sic] MRI evidenced degenerative changes at the tarsometatarsal junction and first metatarsophalangeal joint (Exhibit 11F, 6). In November 2011, x-rays of the right hip showed right sacroiliac and mild right hip degenerative joint disease Pelvic phleboliths (Exhibit 10F, 79). In December 2010, an MRI of the lumbar spine revealed mild spondylosis at L3-S 1 with possible "very minimal" impingement or abutment of the left L3 nerve root at the L3-4 neural foramen (Exhibit 10F, 80). In January 2012, an x-ray of the right shoulder was normal (Exhibit 14F, 7). In November 2012, an x-ray of the left ankle revealed intraoperative images with plate-and-screw fixation of calcaneal fracture. The alignment appeared anatomic. In June 2012, an x-ray of the left hip evidenced no acute findings (Exhibit 13F, 87). The medical examiner reviewed these films as negative (Exhibit 13F, 84). In June 2012, an x-ray of the lumbar spine had minimal findings (Exhibits 13F, 86). Again, the medical examiner reviewed these films as negative (Exhibit 13F, 84). In March 2013, an x-ray of the thoracic

14

> spine evidenced no acute findings but did note degenerative disc disease (Exhibit 20F). In April 2013, an x-ray of the right foot was normal with only slight findings (Exhibit 21F, 3). In July 2013, an MRI of the right foot showed a right foot mass (Exhibit 22F, 3). In February 2013, a stress test was negative (Exhibit 16F, 12).
>
> A review of treatment notes also do not corroborate the claimant's allegations of disability to the extent asserted. In this regard, on November 28, 2012, the claimant had arthroplastic repair of left ankle (Exhibits 8F and 15F). On November 28, 2012, a podiatric consultation evidenced complaints of pain and numbness; however within two days of the surgery, the claimant denied any significant problems. The examiner assessed that she was making good progress. In April 2012, she followed up with her surgeon with records indicating her foot position was normal. She had mild edema but good motion of ankle joint subtaler joint and midtarsal joint. There was some tenderness laterally, but no tenderness with palpation. The foot and ankle films revealed no change in hardware. The examiner assessed that she had made good progress and advised to move from wearing the boot to a tennis shoe (Exhibits 8F and 15F) (Tr. at 34).

The undersigned finds that the ALJ correctly found that Claimant's statements about the intensity, persistence and limiting effects of her symptoms were not entirely credible. See SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record"). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]." Craig, (76 F.3d at 589). In the present matter, the ALJ's credibility determination is supported by substantial evidence.

Weight of Medical Opinions

Under 20 CFR 416.927(d)(1), more weight generally is given to an examiner than to a non-examiner. Section 416.927(d)(2) provides that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial

evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." *Martin v. Secretary of Health, Education and Welfare*, 492 F.2d 905, 908 (4th Cir. 1974); *Hayes v. Gardener*, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir. 1986).

As explained by SSR 96-6p, the regulations provide "progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual become weaker." For example, SSR 96-6p states that opinions of physicians or psychologists who do not have a treatment relationship with the individual are weighed by stricter standards, based to a greater degree on medical evidence, qualifications, and explanations for the opinions, than are required of treating sources.

Thus, SSR 96-6p concludes that the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record, considering such factors as (1) the supportability of the opinion in light of the evidence in the record; (2) consistency with the record, including other medical opinions; (3) and any explanation for the opinion. *Id*.

Social Security Ruling 96-7p confirms that ALJs and the Appeals Council are required to consider findings of fact by state agency medical and psychological consultants and other program physicians and psychologists about the existence and severity of an individual's impairment(s), including the existence and severity of any symptoms. *See* 65 Fed. Reg. 11,866 (Mar. 7, 2000). While ALJs and the Appeals Council are not bound by any state agency findings, they may not ignore these opinions and must explain the weight they give to the opinions in their decisions. *Id*

Claimant asserts that the ALJ failed to reference or discuss the opinion of Dr. Lana Hofeldt

(ECF No. 12). On June 26, 2012, Claimant presented to Thomas Memorial Hospital's emergency room complaining of back pain radiating into the left hip, thigh and knee (Tr. at 795). Claimant was treated by Dr. Lana Hofeldt, who noted on exam that Claimant had lower lumbar spine, soft tissue tenderness in the left lower lumbar area, limited range of motion, and positive straight leg raise on the left at 45 degrees. Dr. Hofeldt instructed Claimant to avoid strenuous activity, to avoid lifting anything greater than 5 pounds, bending, and stooping (Tr. at 796).

The ALJ did address the Thomas Memorial Hospital emergency room visits, including the visit on June 26, 2012. The ALJ held:

> Hospital records indicate she was seen in the emergency room in June 2012 and evaluated for an onset of acute back pain, though her physical exam was normal and she was discharged as stable (Exhibit 13F, 83). In February 2013, she returned reporting chest pain, but a myocardial infarction was ruled out (Exhibit 16F, 12) (Tr. at 33).

Claimant avers that Dr. Hofeldt's instructions from the June 26, 2012, emergency room visit direct Claimant to avoid strenuous activity, to avoid lifting anything greater than 5 pounds, bending and stooping. In response, Defendant asserts that the ALJ is not required recite verbatim a physician's assistant recommendations on what and how much to lift, bend or stoop. The ALJ did not overlook Claimant's emergency room visit. The ALJ pointed out that Claimant's follow-up visit with her personal physician a few weeks after reporting to the emergency room that Claimant's acute lumbar strain had "improved." (Tr. at 31-33, 819). Defendant avers that due to the follow up visit and instruction to apply ice and heat intermittently four to six times daily, common sense dictates that the advice rendered at the emergency room on June 26, 2012, was an "obvious piece of temporary advice" (Tr. at 796). Furthermore, Claimant's follow-up visits a few weeks later reflect that Claimant had "improved" and also improved with follow-up physical therapy. Claimant reported to her physical therapist that she is doing the very things at issue

17

without incident or pain (Tr. at 942). Even if the ALJ committed error by not assigning weight to Dr. Hofeldt's opinion regarding Claimant's emergency room visit, the Fourth Circuit has held that "reversing the ALJ's decision solely because he failed to assign weight to Dr. [Thir's] opinion would be pointless. . . . [I]t is highly unlikely, given the medical evidence of record, that a remand to the agency would change the Commissioner's finding of non-disability." *Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 101 (4th Cir. 2015)(per curiam).

## Conclusion

According to the discussion above, the undersigned finds that the ALJ appropriately considered the combined effects of Claimant's impairments, adequately addressed Claimant's obesity and diabetes, appropriately assessed Claimant's credibility and correctly addressed Claimant's emergency room visit that occurred on June 26, 2012. Claimant has failed to demonstrate that the Commissioner's decision is not supported by substantial evidence.

By Judgment Order entered this day, Plaintiff's Brief in Support of Judgment on the Pleadings (ECF No. 12) is **DENIED**, Defendant's Brief in Support of Defendant's Decision (ECF No. 13) is **GRANTED**, the final decision of the Commissioner is **AFFIRMED** and this matter is **DISMISSED** from the docket of this Court.

The Clerk of this Court is directed to provide copies of this Order to all counsel of record.

Date: March 31, 2017.

Dwane L. Tinsley
United States Magistrate Judge